**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**VIRA J. HYDE,**

    **Plaintiff,**

**v.**                                                              Case No. 8:07-cv-240-T-30MAP

**STORELINK RETAIL GROUP, INC.,**

    **Defendant.**
_____/

## **ORDER**

THIS CAUSE comes before the Court upon Defendant's Motion for Reconsideration (Dkt. 66) and Plaintiff's Response in opposition to the same (Dkt. 69). The Court, having considered the Motion, Response, and supporting memoranda, and being otherwise fully advised in the premises, determines the Motion should be denied.

Defendant Storelink Retail Group, Inc. ("Defendant" or "StoreLink") moves the Court to reconsider its December 4, 2008 Order (Dkt. 65) denying Defendant's Motion for Summary Judgment (the "December 4th Order"). In arguing that the Court's denial of its Motion for Summary Judgment was clear error of law, Defendant raises three legal arguments. The Court will now address each of those arguments.[1]

---

[1] The summary of facts set forth in the Background section of the December 4th Order (Dkt. 65) is incorporated herein by this reference.

# I. Application of Legal Standard for "Cat's Paw" Theory of Liability.

Defendant first argues the Court committed clear error of law by not applying the correct legal standard to its holding that Jaspan's alleged biases could be imputed to the owners of StoreLink. Defendant begins its argument with the statement that "the Court concluded that, even though Jaspan was not a decisionmaker in Plaintiff's termination, his biases could be imputed to the owners of StoreLink because . . . ." Defendant's Motion for Reconsideration at 3. At the outset, the Court never came to the conclusion that Jaspan was not a decision-maker. In addressing Plaintiff's retaliation claims, the Court stated as follows in the December 4th Order:

> Defendants argue that the owners of StoreLink collectively made a decision to terminate Hyde. The owners claim that Jaspan was not present, gave no input, and played no role whatsoever in the decision to terminate Hyde. Moreover, the owners claim they were not aware Hyde had issued a written complaint regarding Jaspan's conduct at the training seminar.
>
> Hyde has provided sufficient evidence to the contrary. All written warnings received by Hyde were issued by Jaspan. Jaspan issued the first of these written warnings approximately ten weeks after Hyde purportedly reported the conduct. Jaspan was the one who ultimately fired Hyde in the Brandon Home Depot parking lot. Moreover, regardless of what role he may or may not have played in deciding to terminate Hyde, a reasonable jury could certainly conclude Jaspan was a decision-maker in determining whether to issue her the written warnings.

December 4th Order at 18-19. Thus, the Court has already concluded material facts exist regarding whether Jaspan was a decision-maker with respect to the written warnings.

With respect to Hyde's termination, StoreLink's owners and Jaspan deny that Jaspan was involved in the decision to terminate Hyde. However, Hyde has presented evidence that

the decision to fire her was based in significant part on Jaspan's write-ups of her performance. Jaspan had direct supervisory authority over her during the events leading up to her termination. Morever, it was Jaspan who actually fired Plaintiff in the Home Depot parking lot.

Even if Jaspan was not a decision-maker with respect to Hyde's termination, whether the "cat's paw" theory or "rubber stamp" theory of liability may be applied to impute Jaspan's allegedly discriminatory animus to the owners of StoreLink requires factual determinations better left to a jury. In Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1131-32 (11th Cir. 1999), the Eleventh Circuit discussed the "cat's paw" theory of liability as follows:

> We have previously stated the general proposition that in some cases, a discharge recommendation by a party with no power to actually discharge the employee may be actionable if the plaintiff proves that the recommendation directly resulted in the employee's discharge. *Zaklama v. Mt. Sinai Medical Center,* 842 F.2d 291, 294 (11th Cir.1988). However, as we have recently explained, this causation must be truly direct. When the biased recommender and the actual decisionmaker are not the same person or persons, a plaintiff may not benefit from the inference of causation that would arise from their common identity. Instead, the plaintiff must prove that the discriminatory animus behind the recommendation, and not the underlying employee misconduct identified in the recommendation, was an actual cause of the other party's decision to terminate the employee. [*Llampallas v. Mini-Circuits, Lab, Inc.,* 163 F.3d 1236, 1248 (11th Cir. 1998)].
>
> One way of proving that the discriminatory animus behind the recommendation caused the discharge is under the "cat's paw" theory. This theory provides that causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee. In such a case, the recommender is using the decisionmaker as a mere conduit, or "cat's paw" to give effect to the recommender's discriminatory animus. *Id.* at 1249.

Defendant argues the "cat's paw" theory cannot be applied to the instant facts because (I) Jaspan never made a recommendation to terminate Hyde, and (ii) the owners conducted an independent review of Hyde's performance before reaching a decision regarding Hyde's termination.

However, as the Court discussed in the December 4th Order, all warnings received by Hyde regarding her performance were issued by Jaspan. While Jaspan claims the decision to terminate Hyde was made by the owners, he acknowledged in his deposition that the owner's decision was based, at least in part, on his write-ups of Hyde. See Jaspan Dep. at 84. Moreover, Mike Murphy testified that Jaspan was Hyde's direct supervisor, and that Murphy directly managed Jaspan, not Hyde. According to Murphy, he recommended Hyde's termination to the owners of StoreLink after receiving Jaspan's write-ups regarding Hyde's performance. Jaspan testified that approximately two weeks prior to Hyde's termination, he told Murphy he was losing control of Hyde's territory, that she was resisting changes, and that she wasn't following up on the written warnings. See Jaspan Dep. at 90-91.

In Llampallas, 163 F.3d at 1248, the Eleventh Circuit discussed that the fact an alleged harasser did not make the decision to terminate a plaintiff was not fatal to the plaintiff's claim, noting however that under such circumstances a plaintiff "cannot benefit from the inference of causation arising from the common identity of a harasser and a decisionmaker. Instead, [the plaintiff] had the burden to prove at trial that [the harasser's] discriminatory animus" caused the termination of the plaintiff's employment. Id.

Considering the evidence, the Court determines there are material issues of fact regarding whether Jaspan either effectively recommended Hyde's termination or significantly influenced the owners to terminate her. See Sparks v. Pilot Freight Carriers, Inc., 830 F.2d 1554, 1565 (11th Cir. 1987) (reversing summary judgment for employer where an issue of material fact remained as to whether an alleged harasser "influenced" a decision-maker to fire the plaintiff); see also Schoenfeld v. Babbitt, 168 F.3d 1257, 1268 (11th Cir. 1999) (considering that although individual accused of discriminatory animus was not a final decision maker, he was "an integral part of [a] multi-level hiring process," and evidence regarding his conduct suggested "a discriminatory animus was at work that tainted the entire hiring process"). Like the plaintiff in Llampallas, Hyde should have the opportunity to meet her burden at trial.[2]

The Stimpson decision also requires a plaintiff proceeding under a "cat's paw" theory to show the decision-maker followed the biased recommendation without independently investigating the complaint against the employee. In Stimpson, the plaintiff was a police officer with a troubled disciplinary record. Stimpson, 186 F.3d at 1329. After continued disciplinary issues, her supervisor recommended her termination to a Civil Service Board. Id. at 1330. The Civil Service Board held a three day hearing in which Stimpson was represented by counsel and permitted to call witnesses in her defense. Id. The Eleventh Circuit held the plaintiff failed to produce sufficient evidence of causation to raise a jury

---

[2] In Llampallas, the Eleventh Circuit reviewed a district court's judgment following a bench trial. It did not review a district court's disposition of a motion summary judgment, as is the case here.

question, stating it was "hard to imagine any other procedural device that would ensure a more fair and independent decision than that of the Civil Service Board." Id. at 1332.

While the StoreLink owners have testified they made the decision after independent review, material issues of fact exist as to the extent the owners investigated and/or relied on information independent of Jaspan. Though there are several references in the record to Hyde's perceived negative attitude, and one instance where an owner met with Hyde to encourage her cooperation, Plaintiff has raised questions of material fact as to whether an independent investigation/review was conducted. Specifically, the Affidavit of Liberty Hardware Manager Rick Haley, in which Haley expresses his satisfaction with Hyde's response to the Liberty Hardware incident, together with Hyde's own testimony, create issues of fact as to whether StoreLink independently investigated Jaspan's claims regarding Hyde's response to the incident.

Accordingly, the court concludes Hyde has raised material issues of fact regarding whether Jaspan's discriminatory animus led to the termination of her employment. A determination regarding the strength of Jaspan's influence on the owners regarding their decision to terminate Hyde is better left to a jury.[3]

---

[3] Plaintiff also argues the Supreme Court's decisions in Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed. 662 (1998) and Burlington Industries v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) establish Defendant should be held vicariously liable for Jaspan's actions. However, these cases addressed sexual harassment and hostile work environment claims that are not at issue in the instant case. Accordingly, application of these cases to the instant facts is not appropriate.

## II.     Application of Burlington North.

Defendant next argues this Court erroneously applied Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed. 345 (2006), by concluding that a jury could find that Jaspan's written warnings to Plaintiff were retaliatory adverse actions. In support of its argument, Defendant cites to Fratarcangeli v. United Parcel Service, 2008 WL 821946, at *9 (M.D.Fla. Mar. 26, 2008), in which the court applied Burlington in determining a written warning did not constitute an adverse employment action because the plaintiff presented no evidence of "lost pay or benefits, job reassignment, or stigma attendant to [the] warning." Defendant argues Fratarcangeli is reasonably consistent with the Eleventh Circuit's opinion in Crawford v. Carroll, 529 F.3d 916, 974 (11th Cir. 2008).

Defendant, however, fails to recognize that in Crawford, which was decided after Fratarcangeli, the Eleventh Circuit expressly stated "[w]e therefore are persuaded that the adverse employment action standard previously applied in this circuit to Title VII retaliation claims is more stringent than the 'materially adverse' standard announced in Burlington." Id. at 974. The Eleventh Circuit discussed that the Burlington court "effectively rejected" the prior standard applied in this circuit "that required an employee to show either an ultimate employment decision or substantial employment action to establish an adverse employment action for purpose of a Title VII retaliation claim." Under the new standard, a materially adverse action "means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (quoting Burlington, 126 S.Ct. at 2415). Significantly, the Eleventh Circuit noted "Burlington also suggests that it is for a jury to

## II.     Application of Burlington North.

Defendant next argues this Court erroneously applied Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed. 345 (2006), by concluding that a jury could find that Jaspan's written warnings to Plaintiff were retaliatory adverse actions. In support of its argument, Defendant cites to Fratarcangeli v. United Parcel Service, 2008 WL 821946, at *9 (M.D.Fla. Mar. 26, 2008), in which the court applied Burlington in determining a written warning did not constitute an adverse employment action because the plaintiff presented no evidence of "lost pay or benefits, job reassignment, or stigma attendant to [the] warning." Defendant argues Fratarcangeli is reasonably consistent with the Eleventh Circuit's opinion in Crawford v. Carroll, 529 F.3d 916, 974 (11th Cir. 2008).

Defendant, however, fails to recognize that in Crawford, which was decided after Fratarcangeli, the Eleventh Circuit expressly stated "[w]e therefore are persuaded that the adverse employment action standard previously applied in this circuit to Title VII retaliation claims is more stringent than the 'materially adverse' standard announced in Burlington." Id. at 974. The Eleventh Circuit discussed that the Burlington court "effectively rejected" the prior standard applied in this circuit "that required an employee to show either an ultimate employment decision or substantial employment action to establish an adverse employment action for purpose of a Title VII retaliation claim." Under the new standard, a materially adverse action "means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (quoting Burlington, 126 S.Ct. at 2415). Significantly, the Eleventh Circuit noted "Burlington also suggests that it is for a jury to

## II.     Application of Burlington North.

Defendant next argues this Court erroneously applied Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed. 345 (2006), by concluding that a jury could find that Jaspan's written warnings to Plaintiff were retaliatory adverse actions. In support of its argument, Defendant cites to Fratarcangeli v. United Parcel Service, 2008 WL 821946, at *9 (M.D.Fla. Mar. 26, 2008), in which the court applied Burlington in determining a written warning did not constitute an adverse employment action because the plaintiff presented no evidence of "lost pay or benefits, job reassignment, or stigma attendant to [the] warning." Defendant argues Fratarcangeli is reasonably consistent with the Eleventh Circuit's opinion in Crawford v. Carroll, 529 F.3d 916, 974 (11th Cir. 2008).

Defendant, however, fails to recognize that in Crawford, which was decided after Fratarcangeli, the Eleventh Circuit expressly stated "[w]e therefore are persuaded that the adverse employment action standard previously applied in this circuit to Title VII retaliation claims is more stringent than the 'materially adverse' standard announced in Burlington." Id. at 974. The Eleventh Circuit discussed that the Burlington court "effectively rejected" the prior standard applied in this circuit "that required an employee to show either an ultimate employment decision or substantial employment action to establish an adverse employment action for purpose of a Title VII retaliation claim." Under the new standard, a materially adverse action "means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (quoting Burlington, 126 S.Ct. at 2415). Significantly, the Eleventh Circuit noted "Burlington also suggests that it is for a jury to

## II.     Application of Burlington North.

Defendant next argues this Court erroneously applied Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed. 345 (2006), by concluding that a jury could find that Jaspan's written warnings to Plaintiff were retaliatory adverse actions. In support of its argument, Defendant cites to Fratarcangeli v. United Parcel Service, 2008 WL 821946, at *9 (M.D.Fla. Mar. 26, 2008), in which the court applied Burlington in determining a written warning did not constitute an adverse employment action because the plaintiff presented no evidence of "lost pay or benefits, job reassignment, or stigma attendant to [the] warning." Defendant argues Fratarcangeli is reasonably consistent with the Eleventh Circuit's opinion in Crawford v. Carroll, 529 F.3d 916, 974 (11th Cir. 2008).

Defendant, however, fails to recognize that in Crawford, which was decided after Fratarcangeli, the Eleventh Circuit expressly stated "[w]e therefore are persuaded that the adverse employment action standard previously applied in this circuit to Title VII retaliation claims is more stringent than the 'materially adverse' standard announced in Burlington." Id. at 974. The Eleventh Circuit discussed that the Burlington court "effectively rejected" the prior standard applied in this circuit "that required an employee to show either an ultimate employment decision or substantial employment action to establish an adverse employment action for purpose of a Title VII retaliation claim." Under the new standard, a materially adverse action "means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (quoting Burlington, 126 S.Ct. at 2415). Significantly, the Eleventh Circuit noted "Burlington also suggests that it is for a jury to

decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions." Id. at 974 n13.

A reasonable jury could decide Jaspan's write-ups of Hyde were "materially adverse" to her under the relaxed standard set forth in Crawford in that they might well have dissuaded a reasonable worker from making or supporting a charge of discrimination. Accordingly, the Court determines it did not commit clear error by concluding the written warnings could be adverse actions under Burlington *and* Crawford.

**III. Material Issues of Fact Regarding Causation and Pretext**.

Defendants final argument is also based upon the Court's alleged erroneous application of Burlington. Because the Court determines it did not commit clear error under Burlington and Crawford, it further determines it was not clear error to conclude triable issues of causation and pretext exist with respect to Plaintiff's retaliation claims.

It is therefore ORDERED AND ADJUDGED that Defendant's Motion for Reconsideration (Dkt. 66) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on February 3, 2009.

/s/ James S. Moody, Jr.
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2007\07-cv-240.mt reconsideration.frm